UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,                                    Case No. 2:21-cv-11940
                                            District Judge Shalina D. Kumar
            Plaintiff,                      Magistrate Judge Anthony P. Patti

v.

SAM HAKKI, M.D.,
*et al.,*

            Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTIONS FOR CASE-TERMINATING SANCTIONS AGAINST DEFENDANT  NABIL BEYDOUN (ECF NO. 122) AND DEFENDANTS MIDWEST MEDICAL LAB LLC AND FOUAD BEYDOUN (ECF NO. 131)

**I.     RECOMMENDATION:** The Court should **GRANT** Plaintiff's motions

for case-terminating sanctions against Defendant Nabil Beydoun (ECF No. 122)

and Defendants Midwest Medical Lab LLC and Fouad Beydoun (ECF No. 131)

and enter default judgment against Defendants Nabil Beydoun, Midwest Medical

Lab LLC, and Fouad Beydoun.

**II.    REPORT:**

### A. Background

Plaintiff filed its complaint in this case on August 20, 2021 (ECF No. 1), and

the case was assigned to United States District Judge Denise Page Hood.  Plaintiff

alleges Defendants Nabil Beydoun and Fouad (a/k/a Frank) Beydoun own Star Pain, a pain management clinic, and they, among other Defendants, implemented a treatment protocol designed to funnel patients from pain clinics (including Star Pain) for medically unnecessary urine drug tests ("UDTs") at laboratories, including Defendants Midwest Medical Lab LLC ("MML"), which is also owned by Fouad Beydoun. (*See* ECF 1, PageID.4-6, PageID.11-12, PageID.15-18.) Plaintiff further alleges that Nabil Beydoun and Fouad Beydoun had ownership interests in, or connections to, numerous other entities and successor entities involved in the fraud scheme, as detailed in Plaintiff's Complaint. (*See* ECF 1, PageID.21-24.)

## 1. Motion Practice

### a. Prior Discovery-Related Motions and Orders

On September 26, 2022, Plaintiff filed its first motion to compel against Defendants Star Pain Management & Rehab LLC, Midwest Medical Lab LLC, Fouad Beydoun, Nabil Beydoun, and Horst Griesser, M.D, asking the court to compel Defendants to provide full and complete answers to State Farm Mutual's First Set of Interrogatories. (ECF No. 83.) Plaintiff asserted that after giving two full months of extensions to reply to the interrogatories, Defendants did not answer any of the interrogatories. (ECF No. 83, PageID.1188.) The motion was referred to me for determination. (ECF No. 84.) Defendants did not respond to the motion,

and it was granted as unopposed.  Defendants were ordered to respond to all outstanding interrogatories by October 27, 2022.

On October 18, 2022, Plaintiff filed a second motion to compel against the same Defendants, this time seeking full and complete responses to Plaintiff's First and Second sets of Document Requests.  (ECF No. 86.)  After receiving multiple extensions to the document requests, Defendants returned responses, with no objection, in which they responded to every request that "to the extent the requested documents exist and are under his custody or control, inspection and related activities will be permitted as requested at a time and place that is mutually convenient for the parties and their respective counsel."  (ECF No. 86, PageID.1290.)  After several attempts by Plaintiff's counsel to reach Defendants' counsel to discuss the responses, defense counsel still had not responded, forcing Plaintiff to file another motion to compel.  (ECF No. 86.)  Judge Hood referred this motion to me as well.  (ECF No. 90.)  Again, Defendants did not file a response to the motion, and it was granted as unopposed.  (ECF No. 92.)  Defendants were ordered to produce the requested documents by November 22. 2022.  (ECF No. 92.)

For both orders to compel, I also found that Plaintiff was entitled to reasonable expenses, including attorney fees associated with preparation of the motions pursuant to Fed. R. Civ. P. 37(a)(5)(A).  (ECF Nos. 85, 92.)  The Court

awarded attorney fees on December 27, 2022, requiring full payment by January 24, 2023. (ECF No. 96.)

Defendants did not comply with either of the Court's orders, and did not produce any documents or provide any interrogatory responses, so Plaintiff filed its first motion for sanctions which was also referred to me. (ECF No. 94, 105.) Once again, Defendants did not file an opposition brief to the motion for sanctions, and instead provided *some*, but not all responses to the outstanding discovery requests. (ECF No. 100. PageID.1522.) Moreover, those responses that were provided were inadequate and incomplete. (*Id.*) Around this point in the litigation, Defendants obtained new counsel. (*See* 1/06/2023 Minute Entry, granting a motion to withdraw & ECF No. 97.) Defendants MML and Fouad Beydoun are now represented by Matthew John Sklut, and Nabil Beydoun is proceeding *pro se*.

I held a hearing on the pending motion for sanctions and an unrelated motion to compel, and granted the motion for sanctions. At the hearing on the motion, counsel for Defendants MML and Fouad Beydoun indicated that he was new to the case, and understood that there had been significant delays, but represented that he was in the process of rapidly preparing responses to the outstanding discovery requests. (ECF No. 117, PageID.1885.) Counsel asked for seven days to prepare the discovery, which the Court granted. However, the Court also cautioned counsel that "[t]his is going to be what I call a last chance order" and that if

4

Plaintiff had to return to court for yet another motion to compel or for sanctions, then Defendants could expect repercussions under Federal Rule of Civil Procedure 37(b). (ECF No. 117, PageID.1886.) The Court stated, "there's a whole list of sanctions that are suggested as possibilities, although, I can be more creative than that, and I have been, up to and including default that the Court can award or recommend." (*Id.*) The Court instructed counsel to go over with his clients that should they find themselves before the Court on this matter again, "what they're facing is the possibility of some pretty severe sanctions that could seriously change this case for them and … make them unable to defend themselves in the ways they would like to, and maybe defend themselves at all if I recommend default." (ECF No. 117, PageID.1886.) Although the Court was speaking to counsel for MML and Fouad Beydoun, Nabil Beydoun was also in the courtroom, representing himself *pro se*, and was subject to the same motion. The Court ruled from the bench and then issued a brief order summarizing its findings.

Specifically, the Court held that "Defendants Midwest Medical Lab LLC, Fouad Beydoun, and Horst Griesser, M.D., must produce the discovery referenced in the Court's October 17, 2022 and November 8, 2022 orders granting Plaintiff's prior motions to compel (ECF Nos. 85, 92) by Thursday, March 23, 2023 (based on the representation made by their counsel), while Defendant Nabil Beydoun must do so by Monday, April 17, 2023." (ECF No. 114, PageID.1870, emphasis

omitted.)  The Court also ordered that should Defendants fail to meet those deadlines, they were required to pay Plaintiff $300 per diem until the discovery was produced.  (ECF No. 114, PageID.1871.)

### b. The Pending Motions for Case-Terminating Sanctions

Less than two months later, Plaintiff filed another motion for sanctions.  In its May 1, 2023 motion for sanctions, Plaintiff requests case-terminating sanctions against *pro se* Defendant Nabil Beydoun.  Plaintiff asserts that despite two motions to compel, one motion for sanctions, and three court orders to do so, Defendant Nabil Beydoun had yet to produce a single document or respond at all to Plaintiff's interrogatories or requests for production.  (ECF No. 122, PageID.1944.) Plaintiff's counsel indicates that she had a telephone conference with Nabil Beydoun on April 21, 2023, in which Defendant agreed to provide responses by the end of the day on April 25th.  Plaintiff's counsel further represents that Defendant was told that if no responses were received, Plaintiff would be seeking case-terminating sanctions against Defendant. (ECF No. 122, PageID.1944-45.) Mr. Beydoun sought yet another extension on April 25, which Plaintiff granted, but then once again nothing was provided, causing Plaintiff to file the currently pending motion for sanctions.

About seven weeks later, Plaintiff filed a motion for case-terminating sanctions against Defendants MML and Fouad Beydoun.  (ECF No. 131.)  In this

motion, Plaintiff asserts that Defendants did not timely comply with the Court's
order to produce the outstanding responses, and then when responses were finally
provided they were incomplete, minimally responsive, and evasive.  (ECF No. 131,
PageID.1992.)  According to Plaintiff, after the incomplete responses were
provided, the parties began active settlement discussions, but when those fell apart,
Plaintiff was forced to bring the instant motion for sanctions.

No response was filed to either motion for sanctions, and both motions were
set for a hearing on January 17, 2024 in front of Judge Hood.  (ECF No. 136, and
10/18/2023 Text Entry.)  Shortly after the hearing was set, the case was reassigned
from Judge Hood to District Judge Shalina D. Kumar.  (*See* 11/17/2023 Text
Entry.)  Judge Kumar referred all discovery matters to me on December 5, 2023.
(ECF No. 145.)

## 2.  February 1, 2024, Motion Hearing

After the motions were referred to me, I scheduled a hearing on them for
February 1, 2024.  (ECF No. 146.)  On the same day – <u>six weeks in advance of the
hearing</u> – that I issued the Notice of Hearing, I entered a Text Order, stating:

> Plaintiff has moved for case ending sanctions against Defendants Nabil
> Beydoun, Midwest Medical Lab LLC and Fouad Beydoun. (ECF Nos. 122,
> 131.) The Court will hold a hearing to consider these motions on Thursday,
> February 1, 2024 at 10 a.m. in Courtroom No. 672. These Defendants are
> HEREBY WARNED, for at least the second time (see ECF No. 117 ,
> PageID.1886), that the present motions place them at risk of all sanctions
> listed in Fed. R. Civ. P. 37(b)(2), up to and including being found in
> contempt of Court and having a default judgment entered against them.

Failure of the PARTIES AND THEIR ATTORNEYS to appear for the hearing shall be considered in determining the motion. The parties are strongly encouraged, between now and the hearing, to explore whether the case against the three Defendants at issue in these motions can be resolved by consent judgment or otherwise. It is SO ORDERED.

(12/13/23 Text Order.)

The hearing convened on February 1, 2024, thirty minutes late, as the Court attempted to give additional time for the relevant individual defendants to arrive. Nonetheless, neither Fouad Beydoun nor Nabil Beydoun appeared for the hearing, despite being ordered to do so.  Notwithstanding the fact that the Court gave six weeks' notice and Fouad Beydoun had been made aware "of this hearing and the consequences potentially of failing to appear" not the mere day before, but "some time ago," Fouad Beydoun was "out of the country," apparently, in Iraq.  (ECF No. 163, PageID.3086-3087, 3098.)

Matthew Sklut, attorney for Fouad Beydoun and MML,[1] indicated that he had written "several" letters to Mr. Beydoun (who is also the client representative of MML) advising him of the particular hearing, its significance, and the potential consequences of failing to appear.  (*Id.* at PageID.3086.)  He stated that Defendant

---

[1] On January 24, 2024, counsel for Defendants Fouad Beydoun and MML filed a motion to withdraw, stating that Defendants have failed to "substantially fulfill their obligations to Counsel regarding Counsel's services – including payment and reasonably maintaining communication."  (ECF No. 154, PageID.2899.)  This motion remains pending and until it is resolved, Mr. Sklut of the Moubarak Law Firm remains counsel of record.

Nabil Beydoun, who is not his client, had called him the day before the hearing to inform counsel that Fouad Beydoun was out of the country and would not be appearing.  (*Id.*)  Significantly, by making that representation, Defendant Nabil Beydoun implicitly acknowledged that he himself was personally aware of the fact that the hearing was scheduled for the following day.

Counsel further stated that he has consistently had trouble communicating with Fouad Beydoun, that early in his representation he had worked with Mr. Beydoun to finalize responses to interrogatories, and he had sent Mr. Beydoun a copy for him to sign and return, but Mr. Beydoun never returned them.  (ECF No. 163, PageID.3088.)  Counsel stated it was his impression that he was not refusing to cooperate but that he was simply negligent.  Counsel also stated that he had "repeatedly advised his clients as far as the severity of the situation, not only as far as this lawsuit is concerned, but also with regard to obeying the court, court's orders, the court's directives and the potential for contempt, and it's all been exhaustively relayed to Mr. Beydoun."  (ECF No. 163, PageID.3088-89.)  Counsel confirmed that his document production was not supplemented as ordered by the Court.  (ECF No. 163, PageID.3089.)

When asked why some of the interrogatories responses were deficient, specifically with regard to failing to list companies with which Mr. Fouad was associated, counsel stated that his client is "lackadaisical" with his businesses, that

counsel "truly believed" that his client had his "hand in so many different cookie jars" that he would not remember off the top of his head and that he did not appear to do further investigation (which was "ancillary at best") other than what he knew from memory. (ECF No. 163, PageID.3090-91.)

With respect to the motion against Nabil Beydoun, he too did not appear at the hearing, although he obviously was fully aware of it. Mr. Sklut advised the Court that when he spoke with Nabil Beydoun, Mr. Beydoun had indicated that he would "try to make it" to the hearing, but that he "had some other conflicts in his schedule." (ECF No. 163, PageID.3099.) Counsel for Plaintiff confirmed that she still did not have any interrogatory responses whatsoever, and no documents, "none at all," since the requests were first served almost a year and a half ago. (ECF No. 163, PageID.3106.) According to Plaintiff's counsel, in advance of the hearing she spoke with Nabil Beydoun and Mr. Beydoun stated that "he'd happily provided 'NA, NA, NA' next to each of the responses" and that Mr. Beydoun's position is that "he doesn't think it's worth his time or expense." (ECF No. 163, PageID.3100.) Plaintiff's counsel believes that Nabil Beydoun is in the United States "as far as" she knows, but has "no idea where he is." (*Id.* at PageID.3099.)

**B. Standard**

Rule 37(b)(2) provides that where a party "fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just

10

orders[,]" including, but not limited to, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, ... striking pleadings in whole or in part[,] ... dismissing the action or proceeding in whole or in part[,] ... [or] rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2). A court may also, in addition to or as an alternative to the above-mentioned orders, direct "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to comply with the court order. Fed. R. Civ. P. 37(b)(2)(C).

In addition, this Court also has the inherent authority to sanction litigants who disobey judicial orders, which "derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *Dell, Inc. v. Elles,* No. 07-2082, 2008 WL 4613978, at *2 (6th Cir. June 10, 2008) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–50 (1991)). In *Dell, Inc. v. Advicon Computer Services, Inc.*, No. 06-11224, 2007 WL 2021842, at *5-6 (E.D. Mich. July 12, 2007), Judge Lawson explained the reach of the Court's power to enter a default judgment in cases of a party's egregious and repeated disregard of court orders:

> Although Federal Rule of Civil Procedure 37(b)(2)(C) authorizes the Court to enter default judgment as a discovery sanction, there is no Rule or statute that authorizes entry of default judgment based on a party's failure to obey court orders in general. Nevertheless, it is well-established that a federal court has the inherent authority to grant such

11

relief when the circumstances warrant as much. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304-06 (11th Cir. 2006) (upholding entry of default judgment as proper use of court's inherent authority where party failed to respond to court orders, failed to appear before the court, and failed to engage in court-ordered discovery); *Thomas, Head, & Griesen Employees Trust v. Buster*, 95 F.3d 1449, 1457-59 (9th Cir. 1996) (upholding entry of default judgment based on inherent authority where party completely ignored the terms of an injunctive order and other court orders); *Shepherd v. American Broadcasting Cos., Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995) ("As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments."); see also *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47-50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (discussing the broad scope of a court's inherent authority.)

A court must consider four factors when determining whether a plaintiff's complaint should be dismissed or default judgment rendered pursuant to Rule 37: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the party's adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002); *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). "The same analytical framework is appropriate in assessing whether entry of a default judgment is the appropriate sanction for disobedience of judicial orders." *Gordon v. Enhanced Acquisitions LLC*, No. 14-13839, 2017 WL

12

2389968, at *2 (E.D. Mich. May 11, 2017) (citing *Dell*, at *6 ("The Court finds that [the Rule 37] factors apply equally to a default judgment entered under its inherent authority.")), *report and recommendation adopted*, 2017 WL 2377501 (E.D. Mich. June 1, 2017).  Nevertheless, the use of default judgment against a defendant under Rule 37(b)(2)(A)(vi) is an extreme sanction.  *See Buck v. U.S. Dep't of Agriculture, Farmers Home Admin.*, 960 F.2d 603, 607-08 (6th Cir. 1992).  "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct."  *Reyes*, 307 F.3d at 458.

## C.   Analysis

For the reasons stated below, I conclude that the four factors support an award of default judgment.

### 1.   Willfulness or Bad Faith

"To support a finding that a [party's] actions were motivated by willfulness, bad faith, or fault under the first factor, the [party's] conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings."  *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (citation omitted); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) (holding that failure to respond to discovery requests and the court's subsequent order constitutes contumacious conduct).  The record here amply supports a finding of bad faith and contumacious conduct.

13

Despite the fact that this matter has been pending since 2021, Plaintiff has yet to receive full and complete discovery responses from Defendants Fouad Beydoun and MML, and has yet to receive *any responses whatsoever* from Defendant Nabil Beydoun. Defendants have wholly failed to respond *at all* to two motions to compel (ECF Nos. 86, 94) and two motions for sanctions (ECF Nos. 100, 122 & 131). Defendants have further failed to abide by this Court's two Text Orders compelling complete discovery responses (ECF Nos. 85, 92), the Court's order granting the first motion for sanctions which required Defendants to supplement and fully respond to the outstanding requests (ECF No. 114), and the Court's order to appear for the hearing (12/13/23 Text Order). They also failed to pay any of the $300 per diem penalty previously ordered in connection with their ongoing failure to respond to discovery. (ECF No. 163, PageID.3105; ECF No. 114, PageID.1871.) Their behavior is beyond "lackadaisical" or "neglectful" and instead displays a consistent intent to thwart the judicial process, recklessly disregard their obligations, and knowingly disobey this Court's orders. This factor therefore weighs strongly in favor of entry of a default judgment.

## 2. Prejudice to the Opposing Party

"A party is prejudiced when it is 'unable to secure the information requested' and 'required to waste time, money, and effort in pursuit of cooperation which [the opposing party] was legally obligated to provide.'" *Barron v. Univ. of*

*Michigan*, 613 F. App'x 480, 485 (6th Cir. 2015) (quoting *Harmon*, 110 F.3d at

368).  Plaintiff's ability to litigate this action has been completely frustrated by

Defendants' inaction.  This case was filed in 2021, but Plaintiff has received only

limited, incomplete, unsigned discovery responses (and then only after Court

order), has been unable to depose Defendants, and the time for discovery is nearly

closed.  The lack of written discovery would prevent any kind of meaningful

deposition in a high stakes litigation such as this one, and there is every indication

that in any event Defendants would fail to appear for a deposition, be "out of the

country," have other unspecified conflicts that they prioritize higher than federal

court orders, or fail to fully answer any questions in the unlikely event they *did*

appear for a deposition.[2]   Plaintiff has had to expend significant resources

pursuing this litigation and has wasted "time, money, and effort in pursuit of

cooperation which [Defendants were] legally obligated to provide."  *Harmon, Inc.*,

110 F.3d at 368 (affirming dismissal of complaint as sanction for failure to

cooperate with discovery and for failure to prosecute).  The Rules and this Court's

orders entitle Plaintiff to full discovery, but that was denied due to Defendants'

---

[2] Plaintiff may nonetheless still attempt to pursue a deposition, and the Court has already ordered that in any such deposition Plaintiff "may exceed the 7 hour, one day limitation found in Fed. R. Civ. P. 30(d)(1) and instead will be allowed up to two full days per deponent, 7 hours each day, which need not occur consecutively." ((2/01/24 Text Order.)  The Court did so in anticipation that even if Plaintiff somehow manages to get these Defendants to sit for their depositions, the predictable run-around will continue.  (ECF No. 163, PageID.3101-02.)

discovery misconduct.  The prejudice factor favors the entry of default judgment here.

### 3.    Whether the Defendant was Warned

Although "[t]here is no magic-words prerequisite to dismissal [or default judgment] under Rule 37(b)," *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013), I find that Defendants here have been warned numerous times that they were facing a possible default judgment, including:

(1) During the hearing on the first motion to compel where the Court advised that should Defendants find themselves before the Court on this matter again they would be facing "the possibility of some pretty severe sanctions" including the possibility of default.  (ECF No. 117, PageID.1886.)  Indeed, the Court specifically stated "[t]his is going to be what I call a last chance order" and that if Plaintiff had to return to court for yet another motion to compel or for sanctions than Defendants could expect repercussions under Federal Rule of Civil Procedure 37(b).  (ECF No. 117, PageID.1886.)

(2) In the Court's December 13, 2023 Text Order, requiring Defendants to be present at the February 1, 2024 hearing and stating that the "present motions place them at risk of all sanctions

listed in Fed. R. Civ. P. 37(b)(2) up to and including being found in contempt of Court and having a default judgment entered against them." (12/13/23 Text Order.)

(3) According to Defendant's counsel, he advised Fouad Beydoun in several letters of the significance of the matter before the Court and the potential consequences of failing to appear (ECF No. 163, PageID.3086). Counsel also stated that he "repeatedly advised his clients as far as the severity of the situation, not only as far as this lawsuit is concerned, but also with regard to obeying the court, court's orders, the court's directives and the potential for contempt, and it's all been exhaustively relayed to Mr. Beydoun." (ECF No. 163, PageID.3088-89.)

(4) Finally, at the February 1, 2024 hearing, Defendants' counsel was provided every opportunity to argue why a default judgment should not be entered against Defendants. Had Nabil Beydoun appeared, he too would have been provided the same opportunity.

Accordingly, Defendants have been warned several times, have previously been sanctioned in the form of attorney's fees and costs, and were clearly on notice that their misconduct could result in entry of a default judgment. This factor weighs in favor of the sanction.

### 4.    Whether Less Drastic Sanctions were Imposed or Considered

Finally, I conclude that no lesser sanction is warranted. In addition to being warned that a default judgment was a possibility, Defendants were previously given lesser sanctions in my orders granting Plaintiff's unopposed motions to compel, and a lesser sanction in my order granting the first motion for sanctions. Specifically, the Court issued orders ruling that all of Defendants' objections to Plaintiff's interrogatories were waived and awarding costs and attorney's fees. (ECF Nos. 85, 92.)   Additionally, when granting the first motion for sanctions, I not only awarded attorney's fees, but I also ordered that should Defendants fail to meet those deadlines, they were required to pay Plaintiff $300 per diem until the discovery was produced (an amount, incidentally, which has not been paid).  (ECF No. 114, PageID.1871; ECF No. 164, PageID.3105.)  None of these sanctions have worked.  It is clear that Defendants have treated their discovery obligations and the Court's orders as elective, which cannot be tolerated.  Indeed, "[d]iscovery abusers must be sanctioned, because '[w]ithout adequate sanctions, the procedures for discovery would be ineffectual.'"  *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 378 (6th Cir. 2008) (affirming default judgment) (quoting 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2281 (2d ed. 1994))*; see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (noting, in a case arising under Rule 37(b) sanctions, that "the most severe in the spectrum of

18

sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.") Here, the Court can fathom no sanction that will result in appropriate compliance by Defendants, sufficiently address Defendants' behavior and deter further conduct of this ilk, other than the entry of default judgment.

Accordingly, all four factors strongly support the imposition of a default judgment against Defendants.

### C. Conclusion

For the reasons stated above, the Court should **GRANT** Plaintiff's motions for case-terminating sanctions against Defendant Nabil Beydoun (ECF No. 122) and Defendants Midwest Medical Lab LLC and Fouad Beydoun (ECF No. 131) and enter default judgment against Defendants Nabil Beydoun, Midwest Medical Lab LLC, and Fouad Beydoun. The default judgment should be held against those three Defendants ONLY with respect to this ruling.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 14, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

20